# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 11, 2013

## STATE OF TENNESSEE v. MICHAEL SCOTT KNERR

**Appeal from the Criminal Court for Davidson County**
**No. 2011-D-2933     Cheryl A. Blackburn, Judge**

---

**No. M2012-02486-CCA-R3-CD- Filed March 5, 2014**

---

The Defendant-Appellant, Michael Scott Knerr, was indicted by the Davidson County Grand Jury in counts 1 and 2 for attempted aggravated rape, in counts 3 and 4 for aggravated sexual battery, in count 5 for attempted especially aggravated kidnapping, and in count 6 for attempted aggravated kidnapping. A jury convicted Knerr of the lesser included offenses of attempted sexual battery in count 3, attempted aggravated sexual battery in count 4, and attempted false imprisonment in count 6 and acquitted him of the remaining counts. At the sentencing hearing, the trial court merged count 3 with count 4 and sentenced Knerr to four years with all but sixty days suspended. In addition, the court imposed a concurrent sentence of six months with all but sixty days suspended for Knerr's conviction for attempted false imprisonment. On appeal, Knerr argues that the evidence is insufficient to sustain his convictions for attempted aggravated sexual battery and attempted sexual battery. Upon review, the judgments of the trial court are affirmed in part and vacated in part, and the case is remanded to the trial court for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Vacated in Part, and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennent (on appeal), Gary C. Tamkin, and Melissa Harrison (at trial), Assistant Public Defenders, Nashville, Tennessee, for the Defendant-Appellant, Michael Scott Knerr.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Trial

This case concerns allegations by E.E.[1] that Knerr touched her on her inner thigh and that his pelvic region touched her pelvic region over her dress as she was struggling to escape from him.

At trial, E.E., the victim, testified that at the time of these offenses, she was working as a prostitute and that she advertised on an internet website as an "adult escort." Prior to the incident in this case, the victim had been arrested for prostitution and had made a deal with Detective Corey Wilson to work undercover so that her case would not be prosecuted. She worked through her website to help Detective Wilson and his team arrest four men in a sting operation. Because of her cooperation, Detective Wilson dropped her charge for prostitution.

On the night of November 6, 2010, the victim received several phone calls from Knerr, but she kept putting him off because "he was kind of weird." She said they eventually agreed on a price, and Knerr gave her an address in Hermitage that he said was his house. Knerr asked her to wear high heels and no underwear, which she said was not that unusual. He also asked her to call fifteen minutes before she got there, which she decided not to do. Instead, she drove directly to the address Knerr had provided, arriving there sometime after 3:00 a.m. on November 7, 2010.

The victim stated that she had a "bad feeling" when she got to the address, which was at the back of an apartment building, not a home, and was "really dark." Because she was nervous, she called her sister, A.W., and asked her to stay on the line while she walked to the back of the apartment building. When she found the address, she thought the apartment was vacant because there were no lights on and no blinds on the windows. She said she did not leave at that point because she turned around and saw Knerr, who was wearing a scarf and a big jacket, approaching her. When she asked Knerr why he was outside, he claimed he had just run out to his car. Because she did not believe that he would have "bundle[d] up" to run to his car, she immediately became suspicious. She said, "I just looked at him like no way, something is wrong. . . . I knew I had to get out of there, but I was nervous."

When the victim asked Knerr if this was his apartment, he told her that he did not live there and pointed to an area near the woods, claiming that he lived "over [t]here." The victim told him that she was not going over there, and Knerr demanded that she go with him in the

---

[1] It is this court's policy to protect the victims of sex crimes by identifying them and their family members by their initials only.

direction of the woods. The victim replied, "[N]o, you told me that you lived here, I don't feel comfortable, I'm going to go." She began asking him questions until she could figure out a way to leave. She said he never responded to her questions and "just had a blank stare" on his face, which scared her. She also said that Knerr never mentioned the money he had promised her. As they were walking, she turned so that she could run away from him, and Knerr "turned [her] around and grabbed [her] underneath [her] knees and pulled [her] so [she] would . . . go down on the ground." She said she her hit the back of her head during the fall, which left "a huge bump." Knerr fell on top of her, and they began "wrestling" on the ground. During this altercation, she saw what looked like the blade of a knife, and she said Knerr "was insinuating" that he had a weapon to scare her. She said that during the struggle, Knerr touched the skin of her inner thigh while he was lying on top of her. She also said that his pelvic region touched her pelvic region through her dress, which was the only clothing that she was wearing that night.

The victim said that Knerr's assault stopped when she told him that she was an "undercover cop" and that other officers could hear them and were right around the corner. When Knerr heard this, he got up and ran away, and the victim ran to her vehicle. She said that she was upset and crying and that her sister, who had remained on the line, had heard everything that happened. The victim told her sister the details of the incident as soon as she got back inside her car. She also told her sister that Knerr had a knife during the incident.

The victim said she did not call 9-1-1 because she had been engaging in prostitution when the incident occurred. She went home and left a message for Detective Wilson in the early hours of the morning, and he interviewed her about the incident later that morning. She gave Detective Wilson Knerr's phone number and the address where the incident had occurred. A few days later, she immediately identified Knerr as her assailant in a photographic lineup.

A.W., the victim's sister, testified that the victim called her in the early morning hours of November 7, 2010, and asked her to stay on the phone because she was concerned for her safety. A few minutes later, A.W. heard a "scuffling" sound and a man's voice, but she could not understand what he was saying. Despite this, A.W. could tell that the victim was struggling with this man. Then she heard the victim say, "I'm a cop, this is a sting" and the scuffling ended. She heard the victim "running and talking at the same time." A.W. said the victim was upset and crying and told her that the man she had met had a knife. When the victim got home, A.W. talked to the victim about calling the undercover police officer that the victim knew.

Detective Corey Wilson with the Metropolitan Nashville Police Department testified that the victim in this case had agreed to "work off" her prostitution charge by assisting him

in "an undercover prostitution sting targeting johns." Detective Wilson said that some time after the victim cooperated in the sting operation, he received a phone call from the victim, who reported the incident with Knerr. He interviewed the victim and noticed that she had a small knot on the back of her head. He said that he did not take a photograph of the knot because it was under her hairline. Following the interview, Detective Wilson tried to find the victim's assailant based on his phone number, the address, and the physical description that she had given him. During his investigation, Detective Wilson discovered that Knerr had once lived at the address where the incident occurred. He then assembled a photographic lineup, and the victim immediately identified Knerr as her assailant.

Detective Eric Fitzgerald with the Sex Crimes Division of the Metropolitan Nashville Police Department testified that he interviewed Knerr at the request of a different detective. He stated that he never talked to the victim and that his involvement in the case was limited to his interview with Knerr. This interview, which was recorded on videotape, was played for the jury. In the interview, Knerr denied having a knife during the incident but acknowledged that he prevented the woman from leaving because he intended to have sex with her. Detective Fitzgerald acknowledged that Knerr signed a formal consent form to search to his car and house and that no knife was ever found.

Knerr testified that on November 6, 2010, he called a woman who was listed in the escort section of a website, and the woman agreed to meet him when he left work. Knerr asked this woman to wear "a short skirt, some high heels, and no underwear," and the woman agreed to this request. He said he sent the woman text messages "to get to know her so [she] wouldn't be too scared when [they] first met."

Knerr stated that he could not have the woman come to his home because he lived with his parents, so he gave her his former address at an apartment in Hermitage because he was familiar with the area and it was close to work. He said he intended to take the woman back to his truck and go to a different area because he knew that a security officer for the apartment complex came through the parking lot once every hour after a certain time at night. He said he asked the woman to call him fifteen minutes before she got there because he did not live at that address and wanted to get there so he "could intercept her before she knocked on the door [to the apartment]" and nobody answered. At the arranged time, he parked his truck on the street near the apartments. He approached the woman as she was knocking on the door to his old apartment. He said, "I just walked up and . . . told her who I was. And I said I really didn't live at that address." He explained that he lived "over in this other direction, so we went from there." Knerr said that they began walking in the direction of his truck, and the woman tried to talk to him, but he "was shy and . . . didn't say much" because he had just met her. Knerr said that he did not immediately try to convince her to go to his truck because he did not believe that she would agree to leave with him, given that she

-4-

thought she was going to a house. Knerr explained, "I just said we could go over here and hope[d] that she would say yes once we got there." He thought that if he could get her to his truck, she would agree to have sex with him once he gave her the money.

Knerr said that he walked with the woman to the corner of the apartment building and then the woman began "walking the other way." He followed her "to get her attention" and said, "[O]ver here." When the woman looked at him and continued walking, he "grabbed her jacket . . ., and she got her heel caught in . . . one of those cracks between the cement blocks. And that's when she started to fall." He said he grabbed her by her jacket and below her kneecap "to hold her up[.]" Knerr denied that he was ever on top of the woman and insisted that "[s]he fell away from me on her butt." Approximately fifteen seconds later, the woman told him she was a cop and this was a sting operation, and he ran away. Knerr denied grabbing her under her knee to force her to fall to the ground; instead, he claimed that the woman "tripped." He also denied grabbing her and pulling her toward him. Knerr stated that he never touched the woman's inner thigh, never pressed his pelvic region into hers, and never tried to rape her. He asserted that "[t]he most I touched was her jacket and below her kneecap." Knerr acknowledged that he was "bent over" but asserted that he was never on the ground. He also denied that he had a knife.

Knerr stated that during his interview with Detective Fitzgerald he initially denied actually meeting the woman from the website because he was hoping to get out of trouble. He said he agreed to many of the things that Detective Fitzgerald said in the interview, even though they were not true, because he was "really tired" from only getting an hour and a half of sleep and "kept dozing off." However, Knerr acknowledged that he was able to repeatedly deny that he had a knife during the incident at the interview.

In rebuttal, the victim testified that she was not wearing a jacket or any other clothing over her dress.

**ANALYSIS**

Knerr argues that the evidence is insufficient to sustain his merged convictions for attempted aggravated sexual battery and attempted sexual battery. He claims that "the evidence did not establish that he attempted, but did not complete, these offenses." Interestingly, Knerr does not contend that the trial court erred by instructing the jury on the lesser included offenses of attempted sexual battery in count 3 and attempted aggravated sexual battery in count 4. We conclude that the evidence is sufficient to sustain Knerr's convictions.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

We note that Knerr was charged in counts 3 and 4 with two counts of aggravated sexual battery under alternative theories. In count 3, Knerr was charged with intentionally engaging in unlawful sexual contact with the victim where force or coercion was used to accomplish the act and where he was armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon. See T.C.A. § 39-13-504(a)(1). In count 4, Knerr was charged with intentionally engaging in unlawful sexual contact with the victim where he caused bodily injury to the victim. See id. § 39-13-504(a)(2). Tennessee Code Annotated section 39-13-501(6) defines the term "sexual contact":

> "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's,

or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]

Id. § 39-13-501(6). "'Intimate parts' includes semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" Id. § 39-13-501(2).

Here, the jury acquitted Knerr of the charged offenses of aggravated sexual battery but found him guilty of the lesser included offenses of attempted sexual battery in count 3 and attempted aggravated sexual battery in count 4. The judgments show that the conviction for attempted sexual battery in count 3 was merged with the conviction for attempted aggravated sexual battery in count 4. However, we will consider the sufficiency of the evidence as to each of these convictions in order to facilitate the possibility of further appellate review. Sexual battery, as relevant to count 3, is the "unlawful sexual contact with a victim by the defendant" where "[f]orce or coercion is used to accomplish the act[.]" Id. § 39-13-505(a)(1). Aggravated sexual battery, as relevant to count 4, is the "unlawful sexual contact with a victim by the defendant" where "[t]he defendant causes bodily injury to the victim[.]" Id. § 39-13-504(a)(2). In addition, criminal attempt, as applicable to this case, is committed when a person "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Id. § 39-12-101(a)(3). However, "[c]onduct does not constitute a substantial step . . . unless the person's entire course of action is corroborative of the intent to commit the offense." Id. § 39-12-101(b). Therefore, in order to obtain a conviction for attempted aggravated sexual battery in this case, the State had to establish that Knerr had the intent to commit the offense of aggravated sexual battery and that he took a substantial step toward the commission of this offense, as corroborated by his entire course of action. Likewise, in order to obtain a conviction for attempted sexual battery, the State had to establish that Knerr had the intent to commit the offense of sexual battery and that he took a substantial step toward the commission of this offense, as corroborated by his entire course of action.

Citing Kevin Fritz Edwards, Knerr argues that the evidence at trial was insufficient to support his convictions for attempted aggravated sexual battery and attempted sexual battery because there was no proof showing that he "attempted and failed" to commit the charged offenses. See State v. Kevin Fritz Edwards, No. E2010-01731-CCA-R3-CD, 2012 WL 1799025, at *10 (Tenn. Crim. App. May 18, 2012). In Kevin Fritz Edwards, the defendant argued that the evidence was insufficient to sustain his conviction for attempted aggravated sexual battery. Id. at *8. In that case, the minor victim alleged that the defendant had rubbed her breasts, vagina and buttocks in four separate incidents in a single night, and

the defendant denied any wrongdoing. Id. at *2. The defendant argued that the evidence was insufficient to sustain his conviction for attempted aggravated sexual battery because the jury, in acquitting him of the charged offense of aggravated sexual battery, must have rejected the victim's testimony that the offense was completed. Id. at *8. After acknowledging that the victim unequivocally testified that the defendant touched her intimate parts and the defendant unequivocally denied any wrongdoing, this court noted that "there was no evidence presented at trial that the Defendant attempted to touch the victim and failed." Id. at *10. This court held that because the facts at trial indicated that the defendant either completed the offense of aggravated sexual battery or did not commit the offense at all, the trial court erred in instructing the jury on the lesser included offense of attempted aggravated sexual battery because there was no evidence which reasonable minds could have accepted regarding the lesser included offense. Id. Ultimately, the court concluded that the evidence was insufficient to sustain the defendant's conviction for attempted aggravated sexual battery because the jury rejected the victim's claim that the defendant touched her intimate parts and the remaining evidence in the record did not establish that the defendant had the intent to commit aggravated sexual battery and that he took a substantial step toward the commission of that offense. Id. at *11.

In Jeremy Wendell Thorpe, No. M2012-02676-CCA-R3-CD, 2013 WL 5436701, at *6 (Tenn. Crim. App. Sept. 27, 2013), a different panel of this court concluded that Kevin Fritz Edwards was wrongly decided. In Jeremy Wendell Thorpe, the defendant, who was convicted of attempted sexual battery by an authority figure, argued that the trial court erred by instructing the jury on the lesser included offense of attempted sexual battery by an authority figure and that the evidence was insufficient to sustain his conviction because the proof failed to establish that the defendant tried and failed to commit a sexual battery of the victim. Id. at *1. In considering the issues on appeal, this panel concluded that Kevin Fritz Edwards was wrongly decided for three reasons:

> First, the jury, as the sole arbiter of the facts and the credibility of the witnesses, was free to accredit any portion of any witness's testimony as it saw fit. See [State v.] Allen, 69 S.W.3d [181,] 189 [(Tenn. 2002)] ("The jury is not required to believe any evidence offered by the State."); see also Tenn. Const. art. I, § 19 ("[T]he jury shall have a right to determine the law and the facts[.]"). The all or nothing dichotomy set up by the [Kevin Fritz Edwards] panel was not the only available interpretation of the facts open to the jury, who saw and heard the witnesses first hand. Second, Code section 40-18-110 provides that, when determining whether to provide an instruction on a lesser included offense, the trial judge should not make any determination about the credibility of the evidence. Third, the appellate court is obliged to review the aptness of a lesser included offense instruction by considering the evidence in

the light most favorable to the existence of the lesser included offense. See, e.g., State v. Brown, 311 S.W.3d 422, 431 (Tenn. 2010). Essentially, the panel examined the proof in the light most favorable to each of the parties rather than in the light most favorable to the existence of the lesser included offense, as is required by statute.

Id. at *6.

The court also held that contrary to the ruling in Kevin Fritz Edwards, the "[f]ailure to complete a criminal offense is not . . . an element of criminal attempt." Id. It explained:

As our supreme court has observed, "the criminal attempt statute requires that the State prove two material elements: the culpability required for the attempted crime; and an act or acts in furtherance of the attempted crime." Wyatt v. State, 24 S.W.3d 319, 323 (Tenn. 2000). The holding in Kevin Fritz Edwards elevates a defendant's failure to complete an offense to the status of an element of that offense, an outcome clearly not contemplated by the legislature, which removed as a defense "that the offense attempted was actually committed." T.C.A. § 39-12-101(c).

Because absence of a completed offense is not an element of the offense of criminal attempt, proof that the defendant in this case actually completed the crime of sexual battery by an authority figure did not prohibit the giving of a jury instruction on the lesser included offense of attempted sexual battery by an authority figure so long as evidence existed that reasonable minds could accept in support of the lesser included offense.

Id. at *6-7. The Jeremy Wendell Thorpe court, after viewing the evidence in the light most favorable to the existence of the lesser included offense of attempted sexual battery by an authority figure, concluded that the trial court did not err in instructing the jury on this lesser included offense. Id. at *7. In addition, after examining the evidence in the light most favorable to the State, the court concluded that the evidence was sufficient to sustain the defendant's conviction for attempted sexual battery by an authority figure because the evidence showed that the defendant intended to commit the offense of sexual battery by an authority figure and that he committed several acts in furtherance of that offense. Id. at *9.

Finally, in State v. Reginald Lamont Graham, No. M2012-02379-CCA-R3-CD, 2013 WL 5436690, at *5-6 (Tenn. Crim. App. Sept. 27, 2013), the same panel that decided Jeremy Wendell Thorpe reiterated its belief that Kevin Fritz Edwards was wrongly decided. In Reginald Lamont Graham, the defendant argued that the evidence was insufficient to support

his convictions for attempted sale of cocaine because the proof established completed offenses of the sale of cocaine. Id. at *4. This court held that the evidence was sufficient to sustain his convictions for attempted sale of cocaine because it established that "the defendant intended to commit the offense of the sale of cocaine and that he completed an act in furtherance of that crime." Id. at *5. It noted that the defendant had cited Kevin Fritz Edwards for the proposition that the evidence at trial was insufficient to support his convictions for attempted sale of cocaine because it failed to establish that he tried and failed to complete the offenses. Id. The court reiterated that Kevin Fritz Edwards was wrongly decided because "[t]he jury, as the sole arbiter of the facts and the credibility of the witnesses, was free to accredit any portion of any witness's testimony as it saw fit." Id. (citing Allen, 69 S.W.3d at 189; Tenn. Const. art. I, § 19). It added, "The jury's decision to convict on a lesser included offense does not necessarily equate with a wholesale rejection or adoption of any particular witness's testimony." Id. Finally, it stated that "[t]he holding in Kevin Fritz Edwards elevates a defendant's failure to complete an offense to the status of an element of that offense, an outcome clearly not contemplated by the legislature, which removed as a defense 'that the offense attempted was actually committed.'" Id. at *6 (citing T.C.A. § 39-12-101(c)).

Based on these authorities, we agree that the jury does not have to wholly reject or adopt any witness's testimony and may accredit any part of any witness's testimony when reaching a verdict. See Jeremy Wendell Thorpe, 2013 WL 5436701, at *8; Reginald Lamont Graham, 2013 WL 5436690, at *5. We also agree that a defendant's failure to complete the offense is not an element of criminal attempt. See Jeremy Wendell Thorpe, 2013 WL 5436701, at *8; Reginald Lamont Graham, 2013 WL 5436690, at *6.

Knerr asserts that the victim unequivocally testified that he grabbed her inner thigh and touched his pelvis against hers and that he unequivocally testified that no sexual contact occurred. Although he concedes that he met the victim for the purpose of paying her for sex, he asserts that no sexual contact occurred, which he claims is supported by the jury's acquittal of him for attempted rape in counts 1 and 2. Regarding his convictions in counts 3 and 4, he contends that the evidence "presented only two possible interpretations of the facts–that [he] either completed offenses involving unlawful sexual contact or he did not." Citing State v. Parker, 350 S.W.3d 883, 909 (Tenn. 2011), Knerr argues that the jury, by acquitting him of the charged offense of aggravated sexual battery, rejected the victim's testimony that he had unlawful sexual contact with her. By rejecting the victim's testimony, he claims no evidence established his intent to commit aggravated sexual battery or sexual battery for the purposes of his two attempt convictions.

In determining whether the evidence was sufficient to support Knerr's conviction for attempted aggravated sexual battery and attempted sexual battery, this court must assess the

evidence in the light most favorable to the State. As we previously noted, in order to obtain a conviction for attempted aggravated sexual battery, as relevant in this case, the State had to establish that Knerr acted with the intent to commit the offense of aggravated sexual battery and that his conduct constituted a substantial step toward the commission of this offense. See T.C.A. § 39-12-101(a)(3). Similarly, to obtain a conviction for attempted sexual battery, the State had to establish that Knerr acted with the intent to commit the offense of sexual battery and that his conduct constituted a substantial step toward the commission of this offense. See id. The State did not have to establish that Knerr attempted but failed to complete the charged offenses of aggravated sexual battery and sexual battery. See Jeremy Wendell Thorpe, 2013 WL 5436701, at *9 (In order to establish the offense of attempted sexual battery by an authority figure, "[t]he State need not have shown that the defendant tried but failed to complete the offense of sexual battery by an authority figure."); Reginald Lamont Graham, 2013 WL 5436690, at *7 ("[A]bsence of a completed offense is not an element of the offense of criminal attempt.").

We conclude that a reasonable jury could have found that Knerr committed the lesser included offenses of attempted aggravated sexual battery and attempted sexual battery beyond a reasonable doubt based on the evidence offered at trial. See Jeremy Wendell Thorpe, 2013 WL 5436701, at *8 (holding that a reasonable jury could have found that the defendant committed the offenses of sexual battery by an authority figure or attempted sexual battery by an authority figure beyond a reasonable doubt, given the defendant's text messages to the victim about his desire to "kiss on" the victim's thighs, his request that she change into shorts to facilitate this kissing, and his act of kissing the victim's inner thighs up to her "bikini line").

Here, the proof showed that Knerr intended to commit the offenses of aggravated sexual battery and sexual battery. Aggravated sexual battery, as relevant to count 4, is the "unlawful sexual contact with a victim by the defendant" where "[t]he defendant causes bodily injury to the victim[.]" T.C.A. § 39-13-504(a)(2). In addition, sexual battery, as relevant to count 3, is the "unlawful sexual contact with a victim by the defendant" where "[f]orce or coercion is used to accomplish the act[.]" Id. § 39-13-505(a)(1). The evidence at trial indicated that Knerr contacted the victim for the purpose of paying her for sex, lied to the victim about his address, attempted to get her to come with him to an undisclosed location, and tried to prevent her from leaving. The evidence also indicated that Knerr caused the victim to fall and hit her head during their struggle. Regardless of whether the jury believed that Knerr accomplished the unlawful sexual contact with the victim, we conclude that this evidence indicated Knerr's intent to commit the offenses of aggravated sexual battery and sexual battery and constituted acts in furtherance of those offenses. See Jeremy Wendell Thorpe, 2013 WL 5436701, *9 n.3 (stating that "rare will be the completed

crime that does not begin with an intent to commit the crime and an act in furtherance of that intent").

Moreover, we note a large discrepancy between the facts in Kevin Fritz Edwards, where there was no interruption of the criminal act, and the facts in this case, which established that the incident between Knerr and the victim abruptly ended when she told Knerr that she was a police officer involved in a sting operation, and he ran away. In convicting Knerr of the lesser included offenses of attempted aggravated sexual battery and attempted sexual battery, the jury "[was] free to accredit any portion of a witness's testimony[.]" Id. at *8. Based on the evidence presented at trial, a reasonable jury could have found that Knerr intended to commit the offenses of aggravated sexual battery and sexual battery by preventing the victim from leaving and injuring her, even though no sexual contact occurred. In addition, a reasonable jury could have found that although Knerr made contact with the victim's intimate parts during their struggle, this contact was not for the purpose of sexual gratification. In either scenario, the jury could have found that Knerr had the intent to commit the offenses of aggravated sexual battery and sexual battery and that he took a substantial step toward the commission of these offenses, as corroborated by his entire course of conduct. For this reason, we conclude that the evidence is sufficient to sustain Knerr's convictions for attempted aggravated sexual battery and attempted sexual battery.

Lastly, we note an error in the judgment forms in this case. Here, the State conceded and the trial court found that the conviction for attempted sexual battery should merge with the conviction for attempted aggravated sexual battery. The court subsequently entered separate judgment forms for each conviction. The judgment form for the attempted sexual battery conviction notes the jury's finding of guilt, states that no separate sentence is imposed, and asserts that this conviction is merged with the attempted aggravated sexual battery conviction. Although the trial court in this case entered two separate judgment forms for the merged convictions, this court has stated that the proper procedure is to enter only one judgment form for the surviving conviction with a notation that the other conviction is merged. See State v. Jose L. Hidalgo, No. M2011-01314-CCA-R3-CD, 2013 WL 1197726, at *11 (Tenn. Crim. App., at Jackson, Mar. 26, 2013) ("[T]his court has stated that the proper practice is to enter only one judgment form with a notation therein that the alternative count is merged."); State v. Cecret C. Williams, No. M2009-01739-CCA-R3- CD, 2010 WL 4674300, at *9 (Tenn. Crim. App. Nov. 17, 2010) ("In a case such as this one, when two offenses merge, it is proper to enter only one judgment of conviction."); State v. Zachary V. Henning, No. W2005-00269-CCA-R3-CD, 2007 WL 570553, at *4 (Tenn. Crim. App. Feb. 23, 2007) ("On remand, the trial court should vacate the judgments of conviction of aggravated assault, including the sentence, and of theft and amend the judgment of conviction of aggravated robbery to reflect the merger of both the findings of guilt of aggravated assault and theft."). Therefore, we vacate the judgment of conviction form for

attempted sexual battery to reflect the merger and remand for entry of a corrected judgment of conviction for the attempted aggravated sexual battery, showing that the attempted sexual battery conviction is merged with the surviving attempted aggravated sexual battery conviction.

## CONCLUSION

We conclude that the evidence presented at trial was sufficient to sustain Knerr's convictions for attempted aggravated sexual battery and attempted sexual battery. However, because the proper procedure is to enter a single judgment of conviction showing that the attempted sexual battery conviction is merged with the attempted aggravated sexual battery conviction, we must vacate the attempted sexual battery judgment form and remand the case for entry of a corrected judgment form for the attempted aggravated sexual battery conviction, showing that the attempted sexual battery conviction is merged with the attempted aggravated sexual battery conviction. Accordingly, the judgments are affirmed in part and vacated in part, and the case is remanded to the trial court for further proceedings in accordance with this opinion.

_____
CAMILLE R. McMULLEN, JUDGE